CLERK'S OFFICE
A TRUE COPY
Mar 11, 2022
s/ DarylOlszewski
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of )<br>*(Briefly describe the property to be searched* )<br>*or identify the person by name and address)* )<br> )<br>Information associated with the cellular device assigned 414-610-0022, with )<br>listed subscriber(s) unknown that is in the custody or control of US Cellular, )<br>a wireless communications service provider that is headquartered at 8410 )<br>W. Bryn Mawr Ave., Suite 800, Chicago, Illinois, 60631. ) | Case No. 22 MJ 26 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC, Section 3583 | Violations of the conditions of supervised release. |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Scott Keller, DUSM
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
telephone _____ *(specify reliable electronic means).*

Date: 3/11/2022

_____
*Judge's signature*

City and state: Milwaukee, WI

William E. Duffin, U.S. Magistrate Judge
*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT

I, Deputy U.S. Marshal (DUSM) Scott Keller, being first duly sworn, hereby depose and state as follows:

1.     I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A), for information about the location of the cellular telephone assigned call number 414-610-0022, (the "Target Cell Phone"), whose service provider is U.S. Cellular ("Service Provider"), a wireless telephone service provider headquartered at 8410 W. Bryn Mawr Ave., Suite 800, Chicago, Illinois, 60631. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.     Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone.

3.     I am employed as a Deputy with the United States Marshals Service and have held that position since 2010.  As part of my duties as a Deputy, I conduct investigations to locate federal and state fugitives 4.  In July 2010, I completed a 12-week training course at the Federal Law Enforcement Training Center located in Glynco, GA.  In September 2010, I also completed the 6-week Basic Deputy Course located at the US Marshals Service Training

1

Academy located in Glynco, GA. I have had both formal training and have participated in numerous investigations that utilize various electronic surveillance techniques. Your affiant is assigned to the U.S. Marshals Fugitive Task Force and has been since 2011, being involved in numerous fugitive investigations during this period of time. Many of these investigations were aided by procurement of records related to electronic communications and subsequent analysis of those records. In most of those cases, the records provided critical investigative leads and corroborative evidence. I have had previous experiences using cellular data in order to locate and apprehend fugitives from justice. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by law to conduct investigations.

4. The facts in this affidavit come from my training and experience, my review of documents and information obtained from other agents. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter

5. The facts in this affidavit come from my training and experience, my review of documents and information obtained from other agents. This affidavit is intended to show merely that there is probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that Sean HARVEY has violated Title 18, United States Code, Sections 3583 (Violations of the Conditions of Supervised Release). HARVEY is the subject of a federal arrest warrant issued on August 18, 2021. There is also probable cause to believe that HARVEY is aware of these charges and has fled. There is also probable cause to believe that the location information described in Attachment B will assist law enforcement in arresting HARVEY, who is a "person

2

to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

7.      The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined 18 U.S.C. Section 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. Section 2711(3)(A)(i).

PROBABLE CAUSE

8.      The United States government, including the USMS, is investigating violations of Title 18, United States Code, Section 3583 committed by HARVEY.

9.      On August 15, 2017, HARVEY was sentenced in the United States District Court for the Eastern District of Wisconsin, case number 15-CR-201, for the charges of Motor Vehicle Robbery and Brandishing a Firearm in Relation to a Crime of Violence, to a period of 48 months' imprisonment on each count to run concurrent and three years' supervised release on Count One and five years' supervised release on Count Two to run concurrent.

10.     HARVEY's date of supervision commenced on October 20, 2020.  Following previous violations of his supervision, HARVEY's supervision was revoked on June 8, 2021. He was then scheduled to have a sentencing hearing on that revocation on August 18, 2021.

11.     On August 12, 2021, HARVEY contacted the location monitoring after hours line advising that he would be late getting home (curfew in time was 9:00 pm).  HARVEY subsequently failed to return home.

12.     On August 12, 2021, an officer from the Town of Brookfield Township Police Department contacted his federal Probation Officer, stating that HARVEY had been pulled over that evening for an illegal U-turn.  HARVEY initially complied with the traffic stop and provided the officer with his driver's license, however there was a strong odor of marijuana

3

coming from the vehicle. When the officer questioned if HARVEY had any marijuana in the vehicle, HARVEY denied knowing of any marijuana in the vehicle. When questioned if the vehicle could be searched, HARVEY declined. The officer then asked HARVEY to step out of the vehicle, at which time HARVEY fled the traffic stop in his vehicle. A high speed chase then ensued with speeds exceeding 100 mph, at which time officer's ended the pursuit.

13. On August 13, 2021, the federal Probation Officer attempted to make contact with HARVEY by phone but was met with negative results. During the evening hours, location monitoring staff spoke with HARVEY's mother who advised that HARVEY was "on the run" and she was trying to talk him into coming home.

14. On August 18, 2021, HARVEY failed to appear for his scheduled sentencing on his revocation and has not been heard from following that date. The Honorable District Court Chief Judge Pamela Pepper issued a warrant for HARVEY's arrest.

15. On September 14, 2021, a criminal complaint was issued in Waukesha County Circuit Court, case number 2021CF001420, charging HARVEY with the offenses of Vehicle Operate Flee/Elude and Resist or Obstruct an Officer. On September 21, 2021, a felony warrant was issued for the arrest of HARVEY for the state matter.

16. On March 7, 2022, Deputy US Marshal (DUSM) Keller made contact with a source of information, who has been found to be reliable and has provided facts and information not known to the public, which have been verified to be accurate. The source indicated that they have been in contact with HARVEY on a regular basis both in person and by phone. This person has spoken with HARVEY on a regular basis on phone number 414-610-0022. The source indicated that they had spoken with HARVEY as recently as March 7, 2022, and that they regularly make calls to and receive calls from that number.

4

17.     In addition, the source provided a current social media Instagram account that is being utilized by HARVEY, that was previously not known to law enforcement.  The Instagram name provided was "FGE_Harv".  DUSM Keller conducted an open search of Instagram for the account associated with "FGE_Harv" and observed a profile photo showing HARVEY holding a large quantity of what appeared to be US currency.  The photo depicted on the Instagram account was compared to previous US Marshals Service booking photos and proves to be the same person.

18.     The number provided by the source was open searched in Cash App, which showed the number being associated with the account name "Richy Rich" with the cash tag "$Harvey3Times".  A photo depicted on the account is of HARVEY wearing cartier sunglasses and holding a cellular phone.  The photo was compared to previous US Marshals Service booking photos and proves to be the same person.

19.     On March 10, 2022, DUSM Keller searched phone number 414-610-0022 in the Milwaukee County Jail Inmate calling system, IC Solutions.  The number was found to have had contact with at least two inmates currently being housed in the Milwaukee County Jail between at least December 2021 and March 2022.  In listening to several calls, the inmates refer to the person they are speaking with on 414-610-0022 as "Harv", which is a known name to which HARVEY is often referred.  In addition, during a call on February 16, 2022, the inmate asked HARVEY about his sister, to which HARVEY responded, "who Christina?"  I am aware, after checking previous booking records through the USMS, that HARVEY has a sister named Christina.

20.     Based on the above information, it is believed that HARVEY is currently utilizing cellular number 414-610-0022 and obtaining information regarding the location of that cellular phone will assist in locating HARVEY.  Law enforcement databases show the Target

5

Cell Phone's number 414-610-0022 to be an active wireless number with US Cellular (the "Service Provider").

21.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

22.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

6

23.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

24.     Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can

be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

25.     Based on my training and experience, I know that wireless providers such as the Service Provider typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as the Service Provider typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

26.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

27.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

28.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may

8

be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

29.     I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

30.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

9

<u>ATTACHMENT A</u>

**Property to Be Searched**

Records and information associated with the cellular device assigned 414-610-0022

(referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber(s)

unknown that is in the custody or control of US Cellular (referred to herein and in Attachment B

as the "Service Provider"), a wireless communications service provider that is headquartered at

8410 W. Bryn Mawr Ave., Suite 800, Chicago, Illinois, 60631.

**Particular Things to be Seized**

**I.      Information to be Disclosed by the Provider**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Service Provider, including any information that has been deleted but is still available to the Service Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Service Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period January 1, 2022, to the current date:

        i.  Names (including subscriber names, user names, and screen names);

        ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii.  Local and long distance telephone connection records;

        iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v.  Length of service (including start date) and types of service utilized;

        vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

        vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

        viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records.

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone, including:

(A) the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

(ii) information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received) as well as per-call measurement data (also known as "real-time tool" or "RTT")].

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication as well as per-call measurement data (also known as "real-time tool" or "RTT").

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days, during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Service Provider, the Service Provider is required to disclose the Location Information to the government. In addition, the Service Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the

12

Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of either (i) violations of 18 U.S.C. 3583 (Violations of the conditions of Supervised Release) involving Sean HARVEY or (ii) HARVEY's flight from justice, since August 18, 2021, including, but not limited to, information pertaining to the following matters:

(a) HARVEY's location.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Service Provider in order to locate the things particularly described in this Warrant.

13